The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good afternoon to everybody. Our case for argument this afternoon is Robert Athey et al. v. United States, case number 2020-2291. Mr. Lechner, are you ready to proceed? Yes, I am, Your Honor. Thank you. And you reserve 10 minutes of your total time for rebuttal. Is that correct? That's correct, Your Honor. Thank you. All right, Counselor, you may begin, please. Thank you. May it please the Court. The decision you will make today is far more important than it might at first seem. Yes, I'm here to appeal a decision which has denied class counsel the hard-earned legal fees which are due after representing the class for 21 years and winning for the class 100 percent of the damages they were owed. And yes, I'm here to say that it's totally unacceptable for the government not to pay the fees and costs worth hundreds of thousands of dollars of the court-appointed administrator and independent business for its services for over a decade, which even continues to this day. But more important is the future negative impact of the claims court decision if it is upheld. Counselor, just to get a little bit more to where the rubber meets the road, I want you to address the common fund doctrine and its application or non-application here. The common fund doctrine. Common fund doctrine, Your Honor, is a common law doctrine which, when a common fund or common benefit is installed, then the plaintiffs themselves or the members of the class who receive the money from the common fund or from the common benefit would normally pay the attorney fees. However, Section 2412B reverses that potential rule under the common law statutorily to shift the fees from the attorney being paid by... But doesn't that shift occur only when there's bad faith involved? No, Your Honor. There are three conditions. One is common fund, which is the most general one. The other is common benefit. And the third is bad faith. Either one of those would shift the fee. And the statute is so clear. Counsel, this is Judge Stoll. Yes, Your Honor. I understand that you're saying that the common law doctrine applies under common law. But what about the argument, or maybe I should say the determination by the Court of Federal Claims? It seemed to me to make some sense where they said, you know, the common law doctrine, that applies, the common fund doctrine, sorry, that applies when not true for the defendants to pay. In this case, they've already provided recovery to the plaintiff's class in this case. And more, it's a question of whether the plaintiff's class should have had a common fund in which to pay out some amounts to the attorneys who did all the work. Why is it that here the common fund is going to make it so the government has to pay legal fees on top of the recovery that they provided to the class? That's because the statute specifically says so, Your Honor. Well, it says, doesn't it say that they should have to pay to the extent that any other party would be liable under the common law? So what exactly? Well, what do you have to support the idea that another defendant would have to pay under the common fund exception? I don't understand what that signal said, but can you hear me, Your Honor? Yes, I can. I apologize. I'm sitting in my chambers right now, and that's my computer. So I apologize that it made it. Please continue. That's quite all right. Your Honor, the principle of the common law has been shifted 40 years ago by Congress. Specifically, if one reads 2412B, there is no question that the United, and I'm quoting now, second sentence of 2412B, the United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law. So there are three groups of people who would be liable under the common law, the plaintiff himself, which is the normal American rule, the class that was created in the case under the common law. If we didn't have this statute, the class would have to pay their own attorney's fee, or if there was a common benefit, that is that the plaintiff had established some principle which other beneficiaries would be able to take advantage of, that they would have to pay their attorneys. But the statute, and the wording of the statute cannot be ignored in any fashion. It is absolutely clear, and it's been so for 40 years. And in Haggard, if you recall, in Haggard 5. Yes, sir. That was the tone that you run out of time. You're into your rebuttal time. But I want to make sure we're fully informed here. Go ahead and answer this question quickly. And then if any of my colleagues have any additional questions, I invite them to go ahead and ask those. Yes, Your Honor. The import of this is extraordinary because it would remove the benefit, the protections which Congress enacted in 2412B for small businesses, for veterans, for federal employees who do not bring a rails to trails case involving hundreds of millions of dollars, but rather are establishing protection for damages that they incurred that they have already won. But now the question is, who pays the attorney's fee? And Congress, 40 years ago, made that perfectly clear. All right, we got that part. Do my colleagues have any additional questions? Not on that issue. Okay, thank you. Counselor, do you want to continue on into your rebuttal time, or do you want to save the time you have? No, Your Honor, I'm fine. This is so strongly the issue in this case that at this point, I really think I don't need to go any further. Okay. Then let's hear from Mr. Berg. Good afternoon, and may it please the Court. Regarding the entitlement to fees under Aegis subsection B, as I think the Court articulated, there is a specific limitation in Aegis subsection B that makes the government's liability for attorney fees and expenses coextensive with that of parties under the common law. Counselor, I have a question for you. I think maybe opposing counsel is interpreting that the same extent as any other party would be liable under common law. Is that referring to defendants? If the United States, in this case, were a defendant? Or are you able to say the United States shall be liable even as the plaintiff class? The reference to… Sorry, Your Honor. No, please continue. I was just concerned that you might not have understood my question, but it seems you do. The reference to any other party under subsection B is a reference to private parties at common law based on the legislative history as articulated by this Court in cases like Gavette. And that reference, therefore, is a limiter of the United States' liability under Aegis to be coextensive with a private party's liability for attorney fees and expenses at common law. And Mr. Lechner here today represented to the Court the understanding that under the common fund doctrine at common law, attorney fees and expenses are not paid by the losing party or the losing defendant, but rather are spread out among the beneficiaries of an equity that may otherwise exist if beneficiaries through litigation are able to benefit from it without contributing to the cost. Doesn't that lead to some unjust or maybe even some absurd circumstances where even in this case, the amount of money that we're talking about isn't as significant as in other cases. But attorney's fees are, after 16, 17 years of litigation, would be significant. And if the fund was to pay, if the defendants or rather if the class was to pay the attorney's fees, there'd be no recovery. And wouldn't that defeat the whole purpose of the Aegis statute? Not necessarily, Your Honor, because in many circumstances, class counsel may be operating on a contingency basis and class counsel here possibly could have been operating on a contingency fee basis from the inception of the lawsuit. And in that type of circumstance. Really? That's one of the elements that you look at that the district court would look at or the trial court in determining whether the Aegis applies or not. And that's whether they have a contingency fee or not. One of the elements in determining whether the common fund exception to the American rule is applicable is whether there is an inequity borne by counsel or by a litigant. And one type of inequity as this court has recognized in Haggard is where in a class situation, a class action, some of the opt-in class members have not entered into separate fee arrangements with class counsel. That's what happened here? In this case, Mr. Lechner represented to the trial court that there were not contingent fee arrangements with class members. Thus, based on that representation. That element does not apply. In this case, your honor, the trial court did find in an inequity which made the common fund exception applicable. However, because the common fund had been depleted, found recovery under the fund, the theory to be unavailable in the case. Well, wouldn't that be a reason to award the Aegis fees outside of the common fund? No, your honor. The analysis pursuant to Aegis subsection B as in Boye is completely distinct from the analysis that is applicable to recovery under subsection D as in Delta based on the statutory text. The inquiry under subsection D as presented in this case is whether the government's position  under subsection B, there being a disagreement about to what extent the common fund exception actually shifts fees to the losing party in the case. Mr. Perkins, I'm sorry. If we were to find that the government's position is not substantially justified, then theoretically, the Aegis fees would apply. The government would be on the hook for that, correct? Yes, your honor, that would open up the possibility. Okay. All right. Thank you. Judge Shull. Thank you, Judge Reynolds. Judge, Mr. Berg, what you're saying is that, yes, the common fund doctrine is in play here, but the requirements for application of the doctrine as they've been spelled out in cases are not met. Is that correct? I know, your honor. Let me just back up a moment. We do not dispute in this case that a common fund exists. Yeah, that's what I mean, but you're saying the requirements that have been developed under the law for drawing money from the common fund for counsel and the class action administrator are not met here. Your honor, we contend based on the common law's conception of this doctrine that fees are never shifted to the losing party in cases where a common fund doctrine applies. In this case, the common fund doctrine we agree with the trial court applies. However, fees are not shifted to the losing party under that theory of relief. Moreover, as class counsel specifically eschewed payment from the fund before the trial court and this court continues to do so, and the trial court reasonably concluded that the amount that was in the fund in this case was insufficient to cover both class counsel's fees and expenses and permit merits recovery, the trial court reasonably concluded that was unavailable and that hoarding should be affirmed. So the requirements for payment from the fund as those requirements have been developed over the law weren't met. That's correct, right? That's your position? They were met, yes. Okay. Let me ask you one question I had. This is getting a little bit to the question of substantially justified. The Court of Federal Claims and you in your brief refer to a situation where supposedly a settlement offer in part, a partial settlement was proposed by the government, but then was rebuffed by appellants in this case. And in his reply brief, Mr. Lechner comes back and starting at page 12 of his reply brief talks about this situation. He says that the Court of Federal Claims and the government had it wrong. Could you explain this a little bit for me, what we're talking about exactly here? Your Honor, we're talking about an instance here where in response to an emotion to compel situation, the government represented to the trial court no later than 2011 that the government had made an offer to, had been migrating its payment system, its payroll payment system to a new system that would better account for these lump sum payouts upon separation from federal service. And in doing so, the government discovered that some former VA employees had been improperly agreement to be able to pay those plaintiffs and be able to remove them from the class. Were those the people here in this case? I am not aware of that specifically, Your Honor. Class counsel may be able to comment on that, but I do not think so. So that was a situation where the government had offered the class counsel that to pay certain plaintiffs and thereby removing their involvement in the case and allowing them to be approximately a decade sooner than they ultimately received payment in the case. And we articulated this to the trial court at length in our brief in response to each application. Mr. Lechner, the class counsel in reply said nothing about this before the trial court, including at oral argument, said nothing about this to the trial court to attempt to rebut it. In assessing the veracity of this representation, the trial court credited the fact that the class counsel did not even attempt to rebut this assertion before the trial court. In their opening brief additionally before this court, the class counsel also has not attempted to rebut this situation as the pleadings make clear before the trial court. Only in reply, as Your Honor noted, do they attempt to, I guess, undermine this assertion. However, even that attempt at undermining this assertion at that point in the litigation is unavailing in that they continue to agree that the United States did attempt to pay certain plaintiffs along the way throughout the litigation, thereby evidencing a receptiveness, the statutory obligation to properly calculate and pay these lump sums. However, class counsel in their reply before this court simply disagrees with the magnitude of that attempted payment in that asserting that it wasn't paying enough of the employees. And the fact of the matter is that the reluctance in paying the few that were discussed in 2011, no later than 2011, could have had a chilling effect on additional payments throughout the litigation that further bolster the substantially justified position of the government in the case. You're saying, Mr. Byrd, that there was some part, there were some number of VA employees who were presented with this offer. Is that what you're saying? The presentation of the offer was to class counsel, Your Honor, and there was a particular number of employees. And at that point, I do not believe it was a large number of employees, but this was as the government was migrating its payment system and attempting to improve its payment processes. These were employees with respect to whom an error had been detected? This is correct. Okay. Thank you. And, Your Honor, if there are no further questions, I can conclude as far as... So this is Judge Stoll. I do want to ask you one question. I've looked at cases like two that talk about how when you're looking at what the government has to have substantially justified the overall position of the government, the entirety of the government's conduct. Opposing counsel is arguing on appeal that the court below erred because it didn't look at the government's overall position and the entirety of the government's conduct and instead looked at a series of peripheral wins. How do you respond to that? Is it mostly with the idea that you had this presentation of an offer to class counsel to a number of employees, but that there's no legal requirement that you look at a singular issue, even if it's the biggest issue in the case? Well, Your Honor, in this case, the trial court did look at the entirety of the government's conduct. The pre-litigation conduct, the trial court credited there what we discussed previously with the presentation of an offer to pay certain employees, removing them from the class, additionally attempting to improve the payment processes that the agency had to better account for and track and pay these lump sum payments that was pre-litigation conduct. Additionally, the trial court also took into account a statement that plaintiffs had made before the court that the errors in these lump sum payments were fairly attributable to an innocent mistake of an institution. And that was a quote from an appellant or a plaintiff then before the trial court and their EJIA application. Additionally, the trial court understood based on an affidavit that appellants had attached their EJIA application that it had always been the policy of the VA to promptly correct lump sum payment errors upon their discovery. And then in the litigation posture of the government, there was the string of successes that we detail in our brief. And those only buttressed the fact that the United States overall position in the litigation was substantially justified. Ultimately, in the opening brief of appellants before this court, they contend only that it was error for the trial court to conclude that our overall position was substantially justified when we did not contest the liability on the singular issue upon which articulated to the trial court no later than 2013 in response to the plaintiff's first partial motion for summary judgment that we agreed with that entitlement and were attempting to settle that entitlement. Appellants before this court cite to a case Sabo from the Court of Federal Claims in 2016. That case actually supports the position that the government's decision to settle those entitlements upon which plaintiff's appellant ultimately prevailed was substantially justified as being consistent with the lump sum payment statute and the facts at the time. Can I ask you one more question about this? Because I want to make sure that it's just an answer, which is what about the fact that the parties, you know, there was a settlement in Archuleta involving this, what I think to be this primary issue about the colas and locality increases. All the other agencies settled on that issue and VA did not. Does that support the argument that the government's position wasn't substantially justified? No, Your Honor, because the government in this case, as this court is aware from the first time that this case was before this court, I believe it was before the same panel as we have today, the several of the issues that were litigated in the AFI phase of this action deal specifically with statutes that are Title 38 statutes that are particularly applied to the VA and those issues underscore the reasonableness of continuing to litigate the matter as it was presented in AFI, especially given the multiple successes that the government had even in this phase of the litigation. Okay, counsel, you're out of time. Thank you, Your Honor. And with that, we respectfully request that the court affirm the decision of the trial court. Thank you. Thank you. Mr. Lechner, how much time does Mr. Lechner have? Judge Reyna, he has just under eight minutes of rebuttal. Okay. All right. Okay, Mr. Lechner. And, you know, you're limited to the statements that you made on your direct argument. So, you have eight minutes. Sir, are you on? Oh, hold on. Yes, Your Honor, I'm on. Thank you. Okay. The government is raising an incident involving 28 employees, I believe, who were paid by the agency in error while the case was pending years ago. And this case involves 3,231 people. It was a little minor incident that then the whole case or something of that nature, but it was only 28 people. Judge Patricia Campbell Smith was the trial court for almost 10 years. Senior Judge Lauren Smith was trial court for 10 full years. This trial court judge has only had one telephone conference between counsel as his total exposure to the issues in this case. The incidents that Mr. Byrd is talking about just have absolutely no application. If you'll notice, Judge Campbell Smith who was the trial court for years during that period never makes any reference to it. Counsel, this is Judge Stoll. Yes, Your Honor. I understand your point. You're saying that this judge didn't have a lot of time working on the case, but I still have to review his determination of whether the government's position was substantially justified for an abuse of discretion, right? That's correct, Your Honor. And here's the point. For 17 years, 17 years involving this class in AFI, for 17 years, the VA did not pay its employees properly with respect to lump sum. Now, that is a very significant issue with respect to whether or not it was substantially justified. Moreover, the government actually argues that it never disputed that its employees were owed this money, and therefore, it was substantially justified. I don't understand that rationale. The substantially justified argument relates to defendants put up during the case were reasonable and rational, and while it lost, nonetheless, it was really making a good argument. So, counsel, this is Judge Stoll again. So, I have to review the decision made below by the Court of Federal Claims. And here, the court denied the request for fees saying the government's position was substantially justified because of a series of some other... So, but, you know, we've got Supreme Court precedence that says district courts are a better position than the Court of Appeals to make these determinations on whether the government's substantially justified, and that I'm supposed to... I'm not supposed to re-weigh the analysis and the weight that the Court of Federal Claims gives to, you know, the various factors and issues that it looks at when it's looking at the overall position to see whether it's substantially justified. So, to a certain extent, I feel like my hands are really tied here. So, where do you see the abuse of discretion? Is there... Do you know of any cases that say that the court's approach of relying on a series of wins, even though they're small, is incorrect? I believe there are any number of cases where, in one motion, Judge Smith gave a certain benefit to the defendant. That's the string of victories. The string of victories was in one motion there. And then, of course, we lost the issue of interest, which is a peripheral issue. Counsel, I have... I'm familiar with the record, and I've also looked at the cases that you've cited, and I don't think anything that supports the idea that the framework that the Court of Federal Claims used here on determining whether the government's position was substantially justified was incorrect, that they weren't allowed to look at those series of wins or that... And so, I really... Could you identify... If you have something, some law in particular that you want to point out to me, I want to give you an opportunity to do so. Yes, Your Honor. The new trial judge did not relate at all to the fact that the VA, for 17 years, the agency... Because in evaluating the issue as to whether they were substantially justified, the court, the trial court, must also look to the actions of the agency. That is absolutely clear in the case law. And this trial court ignored that. For 17 years, the VA did not treat these employees correctly. And that is a prime issue that the trial court should have evaluated, and to say, okay, well, for 17 years, they did it wrong, but they were substantially justified, when they obviously were not. I mean, the law was so clear that the first 17 agencies settled in Archuleta without even filing an answer. I've never really encountered a case in the claims court in which a settlement was affected without even filing an answer. I mean, it was so clear, right from the start. And yet, the trial court did not consider at all the fact that for 17 years, the agency refused to settle it, to pay its employees properly. And that is a reviewable issue, Your Honor. May I also make a reference to the fact that this is allegedly an innocent mistake. What I said in my brief very cordially was perhaps back in 1993, it was an innocent mistake. But 17 other agencies sued in 1999. And the VA certainly knew at that point, that they had made a horrendous mistake involving more than 20,000 employees, and it was settled right away. That's in 1999. But they continue to pay them wrong until 2010. Counsel, this is Judge Stoll again. Hi. Yes, Your Honor. I wanted to ask you, I'm looking at the court's opinion at pages A11 through 12 of the record. And there is some discussion about this. It says, throughout its briefing, the class's primary complaints about the position of the United States focused on the delay in obtaining relief for class members. And so one of the things, then it says, you know, talks about the torpid pace of the parties jointly agree or acquiesce to numerous enlargements of time in the case, and that the court sees no reason why agreed upon delays should prejudice the United States. How do you respond to that? Because that must account for at least some of that 17 years. I know, Your Honor, that's entirely a different issue. Sorry, please let me ask. No, that doesn't refer to the 17 years at all. What that refers to is, for some reason, this judge took issue with the fact that the government asked for 25 continuances during the case, and plaintiffs asked for eight. And so I had complained that the whole case as a whole had taken 21 years. Imagine 21 years when everybody knew that the people were being unpaid, that they weren't being paid correctly, all the way back to 1993. And for some reason, the new trial judge said that the plaintiffs were responsible for the government taking 25 continuances. And that had nothing to do with the fact, Your Honor, if you read those sections very carefully, nothing to do with the fact that VA did not pay these people properly from 1993 to 2010, even though it settled with 17 of the largest agencies from 1999 to 2006. Okay, Mr. Lickner, you're out of time. Yes, thank you very much, Your Honor. Okay, thank you. We thank the parties for their arguments, and this case is now taken under submission.